```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

MIDTRONICS, INC., et al.,                )
                                         )
                Plaintiffs,    )
                                         )
  v.                                     )    No. 06 C 3917
                                         )
AURORA PERFORMANCE PRODUCTS LLC,         )
etc., et al.,                            )
                                         )
                Defendants.    )

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

On July 11, 2008 this Court issued its memorandum opinion and order ("Opinion," 2008 WL 2745941) reflecting its <u>Markman</u> analysis that construed language contained in various claims of United States Patent 5,821,756 (the "'756 Patent") owned by plaintiff Midtronics, Inc. ("Midtronics") and still in suit here.[1] Extensive further litigative activity by the parties culminated in a four-day bench trial on the merits at the beginning of 2011.

Regrettably, since then this Court's unavoidably extensive and ongoing necessity to deal with other cases on its calendar,

---

[1] When this action was first filed, another Midtronics patent (U.S. Patent 4,912,416, the "'416 Patent") was also at issue, but in light of its expiration as well as Midtronics' decision to pursue injunctive relief but not damages, the '416 Patent has dropped out of consideration as an added predicate for relief to Midtronics. For their part, defendants Aurora Performance Products LLC d/b/a Argus Analyzers ("Argus") and BPPower Inc. ("BPPower") have sought to turn the tables by arguing the existence of the '416 Patent as part of an obviousness defense to invalidate the '756 Patent, but Midtronics' Proposed Findings of Fact 134-39 have effectively torpedoed that contention.

often (though not always) of an emergent nature, has prevented it from devoting the type of undivided attention required for the in-depth review and analysis essential to resolution of the complex and technical issues posed by the trial. But fortuitously the unanticipated postponement of two successive scheduled trials--initially the resetting of a trial that had been set to begin on August 15 and then the forced deferral of the trial that had been scheduled to begin on August 1[2]--has enabled this Court to go forward with its resolution of this case now.

This litigation has been conducted by able and experienced counsel on both sides from the outset, and that has continued through the trial and the post-trial submission of detailed proposed findings of fact ("Findings") and conclusions of law ("Conclusions") by each, comprising fully 45 pages and 204 paragraphs on Midtronics' part and 43 pages and 248 paragraphs on defendants' part. In its more than three decades on the bench this Court has never before adopted a litigant's proposed Findings and Conclusions in full--instead it has always made extensive revisions and rewrites to generate what is clearly its own work product (although that process, of course, typically uses the submissions of the prevailing party's qualified counsel

---

[2] That second deferral took place on the eve of trial, unfortunately by reason of the death of plaintiff's lead counsel.

as the takeoff point en route to this Court's final product).

This case, however, has generated the exception that proves the rule. For this Court to recast the excellent submission by Midtronics' counsel, creating a revised set of Findings and Conclusions just to demonstrate that it has given full consideration to the issues, would frankly be make-work, undertaken only to confirm that this Court has indeed given such comprehensive consideration to the competing submissions (as it has). This opinion will instead expressly adopt Midtronics' skillful and persuasive Revised Proposed Findings of Fact and Conclusions of Law,[3] setting out here an abbreviated recapitulation of the proposed Findings and Conclusions that have led this Court to rule in Midtronics' favor in all respects. From a procedural point of view, this treatment is intended to conform to the directive prescribed by Fed. R. Civ. P. ("Rule") 52(a)(1).

To begin with, neither side has challenged this Court's resolution of their competing contentions as to claim construction as set out in the Markman Opinion and as accurately summarized at M. Findings 37-43. Nor, of course, are the parties' respective presentations of background matters meaningfully different, although Midtronics' opening Findings

---

[3] Those will respectively be cited here as "M. Finding --" and "M. Conclusion --."

1-36 are more fully attuned to serve as a springboard for what follows here.

First as to infringement, M. Findings 44-104 provide chapter and verse to confirm that defendants' Accused Products (defined in M. Finding 47) contain every limitation of Claims 1 through 4 of the '756 Patent. Many aspects of that determination are really not disputed by defendants (see, e.g., M. Findings 51, 56, 77, 85, 91, 95, 99 and 103), and as to the rest Midtronics' position has all the better of it. Without this Court's seeking to be exhaustive in the latter respect, one important issue merits special mention: M. Finding 64 shows conclusively why defendants' contention "that the Accused Products do not measure a change in current because they only make one actual measurement of current" is totally empty of merit.

There is likewise no predicate for defendants' disclaimer of willful infringement on their part under the standard set by the en banc opinion in In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007). M. Findings 111-25 demonstrate the satisfaction of that standard in detail, and this Court expressly finds that the clear and convincing evidence here has proved willful infringement. Defendants' motion challenging willfulness (Dkt. 190), previously taken under advisement, is of course denied.

As for the validity of the '756 patent, defendants' claim of

obviousness is no better than makeweight. There is no question that Midtronics satisfies the factual inquiries called for in Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009):

> The obviousness determination turns on underlying factual inquiries involving: (1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial success and satisfaction of a long-felt need. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

And the seminal decision in Graham, id. adds the "failure of others" to the mix. Here none of the prior art references sought to be called upon by defendants in that respect shows obviousness--not the '416 Patent (see M. Findings 134-39) nor any of the other sources pointed to by defendants (see M. Findings 140-54). And as for the Graham-taught secondary considerations, each of them weighs heavily against rather than for a finding of obviousness (see M. Findings 156-61).

With Midtronics thus entitled to prevail on the merits as to both infringement and validity, the propriety of injunctive relief must be considered next. On that score eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 338, 391 (2006) teaches:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

5

>   balance of hardships between the plaintiff and
>   defendant, a remedy in equity is warranted; and
>   (4) that the public interest would not be disserved by
>   a permanent injunction.

eBay, id. goes on to vest the decision for the grant or denial of permanent injunctive relief in this Court's exercise of equitable discretion. Here the irreparability of harm is confirmed by M. Findings 164-66, the inadequacy of remedies at law is shown by M. Findings 168-73, the balancing of hardships in Midtronics' favor is established by M. Findings 175-78 and the advancement of the public interest is amply demonstrated by M. Findings 180-82. Hence Midtronics is entitled to a permanent injunction prohibiting defendants and their employees, agents, officers, owners and affiliates from making, using, offering for sale or selling within the United States or importing into the United States defendants' AA350, AA400, AA500, AA500P or AA550P products (or products not colorably different than those products) until the expiration of the '756 Patent on May 1, 2012.

That leaves for consideration only whether Midtronics, as the prevailing party across the board, should be granted an award of its reasonable attorney fees and expenses pursuant to 35 U.S.C. §285.[4] And because the Findings in that respect must be viewed through the lens of the principles applicable to such awards, this opinion first turns to an exposition of those

---

[4] All further references to Title 35's provisions will simply take the form "Section--."

principles.

To begin with, the district court is given broad discretion in that regard (see, e.g., Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1385 (Fed. Cir. 2008)), although it must of course adhere to the teaching of the Court of Appeals for the Federal Circuit in exercising that discretion. And on that score, less than two months ago that court reconfirmed the importance (though not necessarily the controlling impact) of a finding of willful infringement--here is what it said in Spectralytics, Inc. v. Cordis Corp., 2011 WL 2307402, at *11 (Fed. Cir. June 13), citing Transclean Corp. v. Bridge Wood Servs., Inc., 290 F.3d 1364, 1379 (Fed. Cir. 2002):

> Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees.

And Spectralytics, id. went on to explain the absence of a one-to-one correlation between an enhancement of damages under Section 284 and a fee award under Section 285:

> For example, attorney misconduct or other aggravation of the litigation process may weigh heavily with respect to attorney fees, but not for enhancement of damages.

Because Seagate, 497 F.3d at 1371 has set a showing of objective recklessness as the hurdle to surmount in proving willful infringement so as to permit an award of enhanced damages under Section 284, Midtronics' ability to clear that hurdle

7

operates a fortiori to justify an attorney fee award under Section 285. And in this instance M. Findings 191-202 readily evince that ability: They set out in detail the objective recklessness of defendants' litigation conduct.[5] Accordingly this Court determines that Midtronics is entitled to an award of its reasonable attorney fees and litigation expenses as part of the relief to which its status as prevailing party creates an entitlement.

## Conclusions

In sum, the Findings call for a complete victory in favor of Midtronics and against defendants. More specifically:

1. Argus and BPPower infringed Claims 1 through 4 of the '756 Patent through their offers for sale, sales and importation of their AA350, AA400, AA500, AA500P and AA550P battery testers.

2. Such infringement by those defendants was willful.

3. Those defendants have failed to prove by clear and convincing evidence that any of Claims 1 through 4 is or are invalid.

4. Midtronics is entitled to permanent injunctive relief in the form stated earlier. Midtronics shall

---

[5] It is unnecessary to explore defendants' subjective mindset, for Seagate and later Federal Circuit authority regularly apply the objective standard (see, e.g., iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011) and cases cited there).

8

promptly submit a proposed permanent injunction order setting forth the terms of such an injunction.

    5. Because this action qualifies as an exceptional case under Section 285, Midtronics is entitled to its reasonable attorney fees and expenses (including the fees of its opinion witnesses).

Finally, this action is set for a status hearing at 9 a.m. August 16, 2011 to discuss the timetable and procedures as to the last-mentioned award, together with any other tag ends that the parties believe need to be buttoned up.

                                      _____
                                      Milton I. Shadur
                                      Senior United States District Judge

Date: August 3, 2011